**Freddie PARISH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 03–95–00616–CR.**

Court of Appeals of Texas,
Austin.

Jan. 9, 1997.

Bruce S. Fox, Austin, for appellant.

Ronald Earle, District Attorney, Matthew B. Devlin, Assistant District Attorney, Austin, for appellee:

Before CARROLL, C.J., and KIDD and B.A. SMITH, JJ.

BEA ANN SMITH, Judge.

Appellant, Freddie Parish,[1] appeals from the trial court's denial of his motion to suppress evidence on federal and state constitutional grounds. Pursuant to his guilty plea, Parish was convicted of possession of a controlled substance. The trial court assessed punishment at three years of imprisonment. *See* Tex.Health & Safety Code Ann. § 481.115 (West Supp.1997). We will reverse the judgment of conviction.

---

1. The cause in the trial court is styled "Freddie Parish, a/k/a Freddie Dean Parish, a/k/a Fred Douglas." The cause below which is appealed to this court, No. 953506, simply identified appellant as Freddie Parish.

## BACKGROUND

Parish was arrested pursuant to a search and arrest warrant obtained after an unknown citizen called to inform Crime Stoppers that Freddie Parish, also known as Freddie Holmes, had "numerous cookies" of crack cocaine, which he was selling from room 235 of the Ramada Inn on North Interstate Highway 35; that Parish was a large, dark-complexioned black male over six feet tall, approximately 30 years of age; and that Parish lived in the Craigwood subdivision in Austin and was currently driving a borrowed purple Toyota Corolla with license plate MCR-79C.

After receiving the tip, Austin Police Department Officer Kurt Jacobson conducted a search of the department's computer records, which revealed a 30-year-old Freddie Parish living at 6303 Craigwood, who had been previously arrested for possession of crack cocaine.[2] The officer discovered that license plate "MCR-79C" belonged to a four-door Toyota owned by Cheryl Finnen of Austin. Jacobson then sent Officer Troy Officer to the motel to watch room 235. Officer watched the room from 9:45 a.m. to approximately 1:00 p.m., during which time he confirmed that Fred Parish, listing 6303 Craigwood as his home address, had checked into room 235 at 3:00 a.m. that morning and paid cash for the room. The only activity Officer observed during his surveillance was Parish leaving the motel room once. While Officer watched the room, Jacobson typed the affidavit setting forth the known information, obtained the necessary magistrate's signature, and obtained the search and arrest warrant.[3] The warrant stated that the officers expected to find cocaine and cash and tally sheets connected with drug sales in room 235 of the Ramada Inn.[4]

As Parish walked across a courtyard of the motel at 1:00 that afternoon, Officer Jacobson arrested him pursuant to the warrant. A search of Parish's body revealed $428 in cash; a search of Parish's room yielded nothing. Officers then searched the vehicle described in the affidavit and discovered approximately 23 grams of crack cocaine.

Parish was charged with possession of a controlled substance with the intent to deliver. Parish challenged the admissibility of evidence on the ground that it was obtained in violation of his right to be free from unreasonable searches and seizures under both federal and state law. After the trial court denied the motion to suppress, Parish pleaded guilty to the offense of possession of a controlled substance. See Tex.Health & Safety Code Ann. § 481.115 (West 1994).

## DISCUSSION

By two points of error, Parish challenges the trial court's denial of his motion to suppress the evidence on the ground that the affidavit supporting the issuance of the search and arrest warrant contained insufficient information to establish probable cause, in violation of the federal and state constitutions and the Texas Code of Criminal Procedure.[5] See U.S.Const. amend. IV, XIV; Tex. Const. art. I, §§ 9, 19; Tex.Code Crim.Proc. Ann. art. 1.06 (West 1977), ch. 18 (West 1977 & Supp.1997).

---

**2.** The prior arrest occurred in October 1993 while Parish was standing on Craigwood Drive. After receiving numerous complaints that drug dealers were loitering on the street, police officers approached Parish, who identified himself as Fred Williams. The officers discovered "Fred Williams" had outstanding arrest warrants and attempted to arrest Parish. Parish resisted arrest, but officers eventually subdued him and found crack cocaine in his mouth. This arrest resulted in Parish being sentenced to six months of community supervision.

**3.** The probable cause portion of the affidavit for the search and arrest warrant is attached as an appendix to this opinion.

**4.** The warrant did not name the vehicle as a place to be searched.

**5.** Parish argues his first and second points of error, respectively, under the federal and state constitutions and corresponding case law. The Texas Court of Criminal Appeals has held that, in satisfying the probable cause requirement of Article I, Section 9, the Texas Constitution provides no more protection than the federal constitution; state courts are free to follow the lead of the United States Supreme Court. Eisenhauer v. State, 754 S.W.2d 159, 164 (Tex.Crim.App.), cert. denied, 488 U.S. 848, 109 S.Ct. 127, 102 L.Ed.2d 101 (1988). We, therefore, will address both points of error together.

We review a trial court's rulings at a suppression hearing for an abuse of discretion. *State v. Carter*, 915 S.W.2d 501, 504–505 (Tex.Crim.App.1996). In other words, we determine whether, viewing the totality of the circumstances, a rational trial court could conclude that the police had probable cause to justify the search. *Id.* In evaluating whether anonymously provided information suffices to support a finding of probable cause, the informant's veracity, reliability, and basis of information are still "highly relevant" factors.[6] *Illinois v. Gates*, 462 U.S. 213, 239, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983); *Rojas v. State*, 797 S.W.2d 41, 43 (Tex.Crim.App.1990); *Angulo v. State*, 727 S.W.2d 276, 278 (Tex.Crim.App.1987). Accordingly, an anonymous telephone call alone rarely will merit the requisite level of suspicion to justify even an investigative detention. *Alabama v. White*, 496 U.S. 325, 329, 110 S.Ct. 2412, 2415–16, 110 L.Ed.2d 301 (1990); *Salcido v. State*, 758 S.W.2d 261, 264 (Tex.Crim.App.1988); *Glass v. State*, 681 S.W.2d 599, 601 (Tex.Crim.App.1984). The anonymously provided information must contain some indicia of reliability or be "reasonably corroborated" by police before it can be used to justify a search. *See Gates*, 462 U.S. at 242, 103 S.Ct. at 2334; *White*, 496 U.S. at 329, 110 S.Ct. at 2415–16; *Rojas*, 797 S.W.2d at 44; *Glass*, 681 S.W.2d at 601. Moreover, mere corroboration of details that are easily obtainable at the time the information is provided will not support a finding of probable cause. *Gates*, 462 U.S. at 245, 103 S.Ct. at 2335; *Rojas*, 797 S.W.2d at 44; *Correll v. State*, 696 S.W.2d 297, 299 (Tex.App.—Fort Worth 1985, pet. ref'd). In addition, wholly conclusory statements in the affidavit will not suffice. *Gates*, 462 U.S. at 239, 103 S.Ct. at 2332; *Carter*, 915 S.W.2d at 504; *Eisenhauer v. State*, 754 S.W.2d 159, 164 (Tex.Crim. App.), *cert. denied*, 488 U.S. 848, 109 S.Ct. 127, 102 L.Ed.2d 101 (1988).

In *Gates*, authorities received an anonymous letter detailing a travel scheme with dates upon which Sue Gates would drive from Illinois to Florida, leave the car to be loaded with drugs, and her husband Lance Gates would fly down and drive the car back. *Gates*, 462 U.S. at 225, 103 S.Ct. at 2325. In upholding the issuance of the warrant resulting from the tip, it was the "range of details relating ... to future actions of third parties ordinarily not easily predicted," corroborated by the police, which elevated the information to the level of probable cause. *Id.*

In *Angulo*, an anonymous caller informed police that "two Cuban males" possessing narcotics would be going to the Casa Maria apartments, # 54, in a red Pacer that had a red rag in the gas tank. *Angulo*, 727 S.W.2d at 277. *Angulo* involved a plethora of additional details corroborating the anonymous tip, including an ongoing narcotics investigation by the police of the apartment in question and a simultaneous tip from a previously reliable informant. *Id.* The court of criminal appeals held that the totality of the circumstances provided the officers with probable cause to search the automobile. *Id.* at 280.

The State asserts that its corroboration of all of the information given, along with the additional fact that Parish had been previously convicted of possession of a controlled substance, demonstrates the probability that the information was reliable. The State relies on *Angulo* in support of its argument, contending "it is the amount of corroboration of the tip that controls the issue of probable cause." The trial court agreed, stating at the suppression hearing:

> It appears to me that when you have information from a concerned citizen through Crime Stoppers and the concerned citizen does not wish to be identified, the question then is not the credibility of the concerned citizen, but the credibility of the information that he gives to the police department; and it appears here that all the information that he gave was found to be true.

Both *Gates* and *Angulo* involved significant circumstances in addition to the anonymously provided information, raising the suspicion to the level of probable cause. By contrast, in *Rojas*, a confidential informant told police he

---

6. Formerly, courts sought to determine the existence of each of these requirements, under the *Aguilar–Spinelli* test. *See Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723(1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

"was advised" that a car owned by the defendant had marijuana in the trunk and would be at a funeral that day. Police followed the car from the cemetery to a truck stop where they detained the suspects long enough to obtain a drug dog to sniff the car, after which a search warrant was obtained. The court of criminal appeals held:

> [I]n order to satisfy the totality of the circumstances test, when an anonymous tip is relied upon to furnish probable cause, the informer must assert personal knowledge or there must be additional facts showing reason to believe that the contraband sought will probably be where the information indicates it will be.

*Rojas*, 797 S.W.2d at 44. Thus, corroboration of a bare tip that a person is engaging in criminal activity is insufficient to create probable cause for a search warrant; rather, it is the *amount* and *nature of* the corroborated details within the tip that is important. *See Gates*, 462 U.S. at 225, 103 S.Ct. at 2325; *White*, 496 U.S. at 332, 110 S.Ct. at 2417; *Rojas*, 797 S.W.2d at 44; *Angulo*, 727 S.W.2d at 280. In *White*, a confidential informant told police that White, carrying drugs, would leave a particular apartment at a certain time in a certain vehicle and drive to a particular motel. The Supreme Court found that, although "a close case," the caller's "ability to predict ... *future behavior*" created a sufficient indicia of reliability to provide reasonable suspicion justifying the investigative stop. *White*, 496 U.S. at 332, 110 S.Ct. 2412 (emphasis in original). The intimate nature of the caller's information provided the tip's reliability.[7]

We conclude that the record does not support a finding of probable cause sufficient to justify the issuance of a search warrant. We believe the facts of the present case are like those reviewed by the Fort Worth Court of Appeals in *Correll*. *See Correll*, 696 S.W.2d at 298. There the caller told police, "in room 105 Ranchhouse motel you'll find Carol Lo-

man and Charles Connell [Correll] and fifteen pounds of pot." *Id.* Police confirmed that the room was reserved in the name of Charles Connell [Correll]. Police then observed two cars, which they discovered were registered to the persons identified in the tip, arrive in front of the room. Police subsequently obtained a search warrant, and, upon search of the motel room, found the marijuana. The court of appeals reversed the conviction, finding that it was not even a doubtful or marginal case. *Id.* at 299.

■ As in *Correll*, police in the present case merely corroborated that the room occupant and the car he was driving were properly identified by the informant, information which anyone could have discovered. The anonymous informant asserted no basis for personal knowledge of the facts given. *See Rojas*, 797 S.W.2d at 44. The only additional details in the tip were that Parish went by another name and was driving a borrowed car. We do not think these scant facts supplied a basis for the tip's reliability. They were ascertainable by anyone who Parish may have been in contact with; for example, he may have related them to the motel clerk when he registered for the room. Nor are we convinced that a prior conviction provides the "additional facts" necessary to establish the probability that the person is presently engaging in criminal activity. An anonymous tip, without the observation of any other activity indicating criminal conduct, does not provide probable cause to search the person's home or personal effects solely because that individual has a criminal record. When the tip itself provides no indicia of reliability, such as the prediction of future actions, there must be something more, such as observed activity to elevate the level of suspicion. *See Gates*, 462 U.S. at 245, 103 S.Ct. at 2335; *Giossi v. State*, 831 S.W.2d 887, 889 (Tex. App.—Austin 1992, pet. ref'd); *Correll*, 696 S.W.2d at 299. Here, all that the officers

---

7. We note that the probable cause needed to justify issuance of a warrant is a higher standard than the reasonable suspicion required to justify an investigative stop. *See White*, 496 U.S. at 330, 110 S.Ct. at 2416 ("reasonable suspicion is a less demanding standard than probable cause"); *Johnson v. State*, 912 S.W.2d 227, 235 (Tex.Crim. App.1995) (officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest). We do not think it necessary to detail the cases which held the facts did not even rise to the level of reasonable suspicion. *See Salcido*, 758 S.W.2d at 264; *Glass*, 681 S.W.2d at 601; *Giossi v. State*, 831 S.W.2d 887, 889 (Tex.App.—Austin 1992, pet. ref'd).

observed was Parish leaving the motel room. We hold that, based on the totality of the circumstances, the facts asserted in the affidavit in this case do not support a finding of probable cause sufficient to justify issuance of a search and arrest warrant. Therefore, the trial court abused its discretion in over-ruling the motion to suppress. We sustain both points of error.[8]

## CONCLUSION

Having sustained Parish's two points of error, we reverse the judgment of conviction and remand for a new trial.

8. The State also asserts that even if the affidavit was insufficient to establish probable cause, Officer Jacobson's good faith reliance on the search and arrest warrant supports the trial court's ruling. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). We reject the State's argument here, where Jacobson both prepared the affidavit supporting the search warrant and executed the warrant upon Parish. *See Leon,* 468 U.S. at 922, 104 S.Ct. at 3420.

### APPENDIX: Probable Cause Portion of Affidavit

**The affiant has probable cause for said belief by reason of the following facts:**

Affiant is Officer K. Jacobson #2183, who is employed by the City of Austin Police Department and is currently assigned to the Special Investigations Section.

On 6-19-95, A concerned citizen called the Austin Police Department Crime Stoppers unit regarding a subject named Freddie Parish. The concerned citizen stated that Freddie Parish, who also goes by Freddie Holmes, is staying at the Ramada Inn north, room #235. The concerned citizen stated that Freddie Parish is keeping and selling crack cocaine from the aforementioned hotel room. The concerned citizen stated that Freddie Parish is in possession of numerous cookies of crack cocaine. The concerned citizen stated that Freddie Parish lives in the Craigwood subdivision in Austin, Texas and is currently driving a purple Toyota Corolla, which he borrowed. The concerned citizen stated the vehicle is bearing Texas license plate MCR79C. The concerned citizen stated that Freddie Holmes is a large, dark complexion black male, over six foot in height, and approximately 30 years of age. The concerned citizen did not wish to be identify.

Affiant found through Austin Police Department Computerized Incident reports that on 6-22-94, Freddie Parish, black male born 8-17-64 was arrested for traffic warrants. In this incident, which is documented in Austin Police Incident report 94-1731308, Freddie Parish gave his residence address as 6303 Craigwood, Austin, Texas, which is in the Craigwood subdivision off E. M.L.K. Blvd in Austin, Texas.

Affiant found that in Austin Police Incident report 93-3031504, dated 10-30-93, that Freddie Dean Parish, black male born 8-17-64 was arrested for possession of controlled substance, to wit: crack cocaine, aggravated assault, and resisting arrest. In this incident, street narcotic officers observed Freddie Parish standing in the 4600 blk of Craigwood Drive. Citizens and patrol officers in the Craigwood neighborhood have complained on numerous occasions about drug dealers standing in and around the parking lot of the convenience store in the 4600 block of Craigwood Drive. The street narcotic officers approached Freddie Parish, who identified himself as Fred Williams, born 8-17-62. The street narcotic officers found that Fred Williams had three outstanding felony warrants and attempted to arrest the subject. Freddie Parish, aka Fred Williams, appeared to have a controlled substance in his mouth, which he tried to swallow.

As Freddie Parish struggled with the officers, he reached up, unsnapped the holster on Officer J. Robledo's service revolver, and began pulling the weapon out of it's holster. Freddie Parish was subsequently subdued and a quantity of crack cocaine was retrieved from his mouth.

As a result of this incident, Freddie Parish was sentenced on 5-10-94 to six months probation for possession of controlled substance and the offense of taking a peace officers weapon was dismissed.

**Affiant has found through Texas Department of Public Safety Motor Vehicle Registration records that Texas license plate MCR79C belongs on a 1993 Toyota four door vehicle registered to Cheryl L. Finnen, 6302 Huntleigh Way, Austin, Texas.**

Affiant has found through Austin Police Department Identification Section that Freddie Parish, black male born 8-17-64 has Austin Police Identification file number 168026. This same file describes Freddie Parish as being a black male, 6'3" tall, and 250 pounds in weight.

On 6-19-95, Affiant directed Special Investigations Officer T. Officer to talk with the management at the Ramada Inn located at 9220 N. IH35, Austin, Texas regarding Freddie Parish and room #235. Officer T. Officer found that Fred Parish checked in at the Ramada Inn and rented room #235 at approximately 3:00 a.m. on this date. Officer T. Officer found that Fred Parish gave his residence address as 6303 Craigwood Circle, Austin, Texas, and that he paid in cash for one day.

Affiant knows through experience and training in narcotic investigations that individuals who deal in illegal controlled substances maintain books, records, receipts, notes, ledgers, bank records and other papers relating to the sale and distribution of illegal controlled substances. These individuals commonly "front" (provide illegal controlled substance on consignment) illegal controlled substances to their clients and thus keep some type of record concerning monies owed. The aforementioned records are maintained by these individuals in locations of ready access, such as their residence, motor vehicle, and/or their person.

Affiant believes that individuals who are concerned with criminal activity in their neighborhood should be allowed to contact law enforcment authorities about this illegal activity without being identified and placed in danger by suspects, thus the purpose of the Crime Stoppers program.

Affiant believes that their information regarding illegal activities should be considered true, subject to verification. Affiant believes that all of the information provided by the concerned citizen has been verified and cooberated by your affiant, and that all information provided by the concerned citizen is true and correct.

Wherefore, affiant asks for the issuance of a warrant that will authorize him to search said suspected place and premises for said personal property and seize the same and to arrest each said described and accused person.

_____ 2185
AFFIANT

SUBSCRIBED TO AND SWORN TO BEFORE ME BY SAID AFFIANT ON THIS THE 19TH DAY OF JUNE, 1995.

_____
JUDGE PRESIDING