COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-03-136-CR

 

 

JANE ETTA HARRIS                                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM THE 213TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

  OPINION ON STATE=S PETITION FOR
DISCRETIONARY REVIEW 

 

                                              ------------








In its most recent petition for discretionary
review, the State complains that AAppellant
certainly never preserved the outlandish Franks violation invented and
sustained by the majority@ and contends that A[t]he
majority=s feeble
efforts to defend its misreading of the affidavit cannot withstand scrutiny,@
resulting in a holding that is Aill
considered in several respectsCand made
all the more so by the majority=s
repeated refusal to acknowledge the State=s
argument@ that AAppellant
failed to preserve any Franks complaint in the trial court.@  The State also complains that, by referring
to the affiant by name, this court Asavages
him.@

Because our opinion of November 23, 2005 was
apparently inartfully worded, pursuant to rule of appellate procedure 50,[1]
we withdraw that opinion and judgment and substitute the following.  In deference to the State=s
sensibilities, we now refer to the affiant as Officer X.

A jury found Appellant Jane Etta Harris guilty of
possession of a controlled substance and assessed her punishment at ten years=
imprisonment.  The trial court sentenced
her accordingly.  In three points,
Appellant challenges (1) the trial court=s denial
of her motion to suppress based on an invalid search warrant, (2) the trial
court=s
refusal to conduct an in-camera hearing related to a confidential informant,
and (3) the trial court=s denial of Appellant=s
requested article 38.23 jury instruction. 
Because we hold that the trial court abused its discretion by denying
Appellant=s motion to suppress, we reverse
the trial court=s judgment and remand this case
for a new trial without the illegally seized evidence.

 








Background Facts

In June 2001, the Fort Worth Police Department
received a Tarrant County Crime Stoppers tip that drugs were being sold out of
Apartment No. 158 at 5308 East Rosedale in Fort Worth.  Officer X, the Fort Worth police officer
assigned to investigate the complaint, said that he observed traffic which he
described as consistent with narcotics dealings coming from the general area of
the apartment.  He then arranged for a
confidential informant to attempt a narcotics purchase from the apartment.  After Officer X used the confidential
informant to conduct an undercover buy, he obtained a search warrant for the
apartment.  The police executed the
search warrant and recovered over four grams of cocaine.

In a two-count indictment, Appellant was charged
with possession of cocaine with intent to deliver and possession of
cocaine.  Prior to trial, Appellant filed
a motion to disclose the identity of the confidential informant and a motion to
suppress, alleging that the search warrant was illegally issued because, among
other things, the magistrate was misled by information in the affidavit that
the officer knew was false or would have known was false except for his
reckless disregard for the truth.  After
a hearing, the trial court denied both motions.

 








Motion to Suppress

Parameters of Review








When reviewing a motion to suppress evidence
obtained pursuant to a search warrant, the trial court is to look to the
totality of the circumstances as contained within the four corners of the
affidavit.[2]  Our review is limited to examining the four
corners of the affidavit to determine whether probable cause existed.[3]  In this review, we are to determine whether
there was a fair probability, not an actual showing, that contraband or
evidence of a crime would be found in a particular place in light of the
totality of the facts set forth in the affidavit.[4]  The officer=s
affidavit must have provided the magistrate with a substantial basis for
concluding that a search would uncover evidence of wrongdoing.[5]  The informant=s reliability
or basis of knowledge is relevant in determining the value of his assertions.[6]  Corroboration of the details of an informant=s tip
through independent police investigation can also be relevant in the magistrate=s
determination of probable cause.[7]








Likewise, the affidavit should set forth the
foundation for the officer=s belief
in an informant=s credibility and veracity.  However, Aa
deficiency in one may be compensated . . . by a strong showing as to the other,
or by some other indicia of reliability,@ all of
which are relevant considerations under the totality of the circumstances.[8]
 Additionally, if a defendant establishes
by a preponderance of the evidence that the affiant knowingly and
intentionally, or with reckless disregard for the truth, included a false
statement in the affidavit and that, without the affidavit=s false
statement, it is insufficient to establish probable cause, the search warrant
must be voided.[9]  As a reviewing court, we are to ensure that,
after excluding statements shown by a preponderance of the evidence to be
false, the magistrate had a substantial basis for concluding that probable
cause existed.[10]

The Texas Constitution places a heavy burden on
the courts of appeals. Once we determine the facts of a specific case, Athe
decision of [the court of appeals] shall be conclusive on all questions of fact
brought before [us] on appeal or error.@[11]  We therefore cannot rely on a higher court to
correct any misunderstanding of the facts of which we may be guilty.  Because of this unique duty, we have
carefully examined the record to glean the facts actually established
therein.  Similarly, the fact that legal
determinations are properly reviewed by the Texas Court of Criminal Appeals
does not decrease our equally heavy burden to apply the law in accordance with
statutory and constitutional mandates, as well as consistently with case
precedent.

The State=s Waiver Argument








On appeal, the State argues, ATo the
extent that Appellant=s briefing may be seeking to
raise something other than a Franks claim under the Fourth Amendment,
such claim(s) should be held waived.@  The State also argues, AAppellant=s Franks
complaint was not preserved at trial.@

In her amended motion to suppress, Appellant
relies on both state and federal constitutional protections, as she does on
appeal.  We hold that Appellant did not
waive her state constitutional claims. 
As to the Franks complaint, the State concedes that Appellant=s
amended motion to suppress includes a Franks complaint, which it
describes as Aone boilerplate accusation Cthat
there was false information in the affidavit.@  The State argues that Appellant never
identified the false information either in her motion or at the hearing.  The State is incorrect.  As we indicated in our prior opinions, the Franks
issue was squarely before the trial judge. 
It was presented in the amended motion to suppress, and it was raised in
the hearing on the motion.

The State asks us to employ a hypertechnical
analysis of both the pleadings and counsels=
statements in the trial court.  This
court is well aware that lawyers are rarely as articulate as they would prefer
to be when faced with the fast-paced and often unpredictable situations
encountered in the trial court.  Were we
to employ the scrutiny the State demands in the case now before this court, we
would be compelled to hold that the State conceded at the hearing that the
search was conducted without a valid warrant. 
The prosecutor stated in open court,








The State is conceding that the arrest was warrantless.  In other words, that would force the State to
put their witnesses on first.  

We do not in any way concede that the search was not warrantless.  [Emphasis added.]

 

Were we to read that statement as critically as the State demands,
this opinion would end here.

Because we recognize that, unlike an appellate
court, the trial court affords less opportunity for prepared remarks, we read
statements of counsel in a common-sense manner. 
Consequently, we recognize that both the trial judge and prosecutor
understood Appellant=s Franks complaint, as
does this court.  Opting not to call the
affiant a liar, Appellant=s counsel, who is a former
police officer, argued to the trial court that Officer X=s
affidavit contained statements that were not true, not because of the officer=s Anegative
or bad faith intentions,@ but because of a reckless
disregard for the truth.  Appellant also
stated specifically to the trial court, AI want
to try to show they did not observe him: they did do a search of the informant
and were not able to see, and it=s very
well possible that the drugs came from other locations.@








At the conclusion of the hearing, Appellant
argued that the informant was unreliable and that the information he supplied
that was used in the affidavit was unreliable. 
She also argued that, although Officer X had stated in his affidavit
that he was able to see the informant enter Appellant=s
apartment, the record reflected that Officer X was not able to see the
informant.

On appeal, Appellant argues, 

Contrary to his
testimony, Officer [X]=s affidavit says nothing
about a Crime Stoppers tip and then later finding an informant to do the buy,
or that it was the officer who pointed out the Abreezeway that the
apartment was located in@ to the informant (not
the other way around as his affidavit states) but makes it appear this was all
done by one Aconfidential informant.@

 

As
she further explains in her reply brief,

 

The key issue in this case revolves around a misrepresentation made by
the police officer when he swore out his warrant affidavit before the issuing
magistrate.  The officer/affiant
contradicted his affidavit in court in his sworn testimony about the Aparticular place@ to be searched.  The issue for the Court to determine is
whether this merits a reversal of Appellant=s conviction.

 

The State=s
arguments regarding waiver are without merit and contrary to the record now
before this court.  We hold that
Appellant preserved the challenged claims.

Merits of the Appeal

The affidavit in question states, in its
entirety:

MY BELIEFS ARE BASED ON
THE FOLLOWING FACTS AND CIRCUMSTANCES:

 

1.     That
your affiant, [X] #2615, has been a Fort Worth Police Officer for over nine
years and is currently assigned to the Special Operations Division, Narcotic
Section.








2.     That
your affiant met with a reliable confidential informant concerning the illegal
possession and distribution of crack cocaine from 5308 E. Rosedale #158.  That the confidential informant provided the
following information:

 

A.     That
black female approximately 38-42 years of age, 5'08"-5'10" tall
and weighing approximately 125-135 pounds, medium complexion and medium black
hair[], residing at 5308 E. Rosedale #158, is involved in the distribution of
crack cocaine.

 

B.     That
the confidential informant has personally observed the suspect in possession of
and distributing crack cocaine from within 5308 E. Rosedale #158.

 

3.     That
your affiant met with the confidential informant at a prearranged
location.  The informant specifically
pointed at the location described in the body of this affidavit.

 

That your affiant
confirmed the location appeared exactly as described by the informant.  Your affiant further corroborated much of the
informant[>]s information through
surveillance and independent investigation.

 

4.     That
in the past, the informant has displayed the ability to accurately identify
crack cocaine which was later seized and confirmed by laboratory analysis to be
a controlled substance.  That the
informant has provided information that has le[]d to the confiscation of crack
cocaine and the arrest of individuals for possession of controlled substance.

 








5.     That
on June 27th, 2001, your affiant met with a reliable and confidential
informant.  At this time, your affiant
provided the confidential informant with twenty dollars of U.S. currency and
instructed the confidential informant to go to 5308 E. Rosedale #158 and
purchase twenty dollars worth of crack cocaine [and] then return and meet with
your affiant. Before leaving your affiant, the informant was searched and found
to have no contraband on his person. 
Upon leaving your affiant, your affiant conducted a visual surveillance
as the confidential informant went into the apartment complex located at 5308
E. Rosedale #158.  Once inside, the
confidential informant stayed a short period of time, then returned and met
with your affiant.  The confidential
informant then produced an off-white rocklike substance that was purported to
be crack cocaine.

 

The confidential
informant stated that the purported crack cocaine was purchased from black
female approximately 38-42 years of age, 5'08"-5'10" tall and
weighing approximately 125-135 pounds, medium complexion and medium black hair.
 The informant was again searched by
your affiant and again found to have no contraband on his person.  The substance was subsequently field tested
by your affiant, at which time the substance showed positive for crack cocaine.

 

6.     That
your affiant is aware t[hat] it is common for persons involved in narcotics to
keep books, notes, ledgers, money orders, records pertaining to narcotics
trafficking, files relating to the transportation, ordering, sale and
distribution of narcotics, currency, financial instruments, jewelry and/or
proceeds of narcotics trafficking.  Also
telephone and address books, papers reflecting names, addresses of possible
subjects involved in the illicit sales of narcotics, property, materials used
in the packing, cutting, or weighing up of narcotics and firearms.

 

7.     That
it is common for individuals involved in the possession and distribution of
narcotics to carry firearms, therefore to knock/announce could jeopardize the
safety of officers entering the residence and/or allow the destruction of
evidence.

 

8.     That
your affiant is well aware and stresses the need for the confidential informant
in this investigation to remain anonymous for his/her personal safety as well
as for the future success of ongoing narcotic investigations.








Therefore, I, the
undersigned ask that a search warrant be issued according to the provisions of
the State Law to search for and seize the controlled substance[,] namely crack
cocaine, believed unlawfully possessed by black female approximately 38-42
years of age, 5'08"-5'10" tall and weighing approximately 125-135
pounds, medium complexion and medium black hair[,] at 5308 E. Rosedale #158,
in the City of Fort Worth, Tarrant County, State of Texas.

 

Appellant argues that Officer X wrote his
affidavit in such a way that it gives the impression that he actually saw the
confidential informant enter Apartment No. 158, when, in actuality, Officer X
only saw the confidential informant enter a breezeway that led to Apartment No.
158 and three other apartments.  Officer
X testified that while he observed the informant enter the breezeway, he did
not see the informant enter Apartment No. 158. 
Appellant argued at the hearing that Officer X exhibited bad faith in
failing to verify that the informant entered Apartment No. 158.  Relying on Franks v. Delaware,
Appellant now contends that Officer X=s
reckless disregard for the truth renders the search warrant invalid under the
Fourth Amendment.[12]








In Franks, the United States Supreme Court
stated that if a defendant establishes by a preponderance of the evidence that
a false statement was included by the affiant knowingly and intentionally, or
with reckless disregard for the truth, and that without the affidavit=s false
statement, it is insufficient to establish probable cause, the search warrant
must be voided.[13]  If the statement only evidences the police=s mere
negligence in checking or recording the facts relevant to a probable cause
determination, then it is beyond the scope of Franks.[14]
 That is, a misstatement in an affidavit
that is the result of simple negligence or inadvertence, as opposed to reckless
disregard for the truth, will not render invalid the warrant based on it.[15]

At the Franks hearing, Officer X admitted
that although he had received a Crime Stoppers tip that narcotics were sold out
of the apartment in question, he did nothing to corroborate the tip or to
confirm its information.  That is, he did
not perform surveillance on the apartment, did not check the trash, and did not
confirm with other sources of information the report of drug-dealing
there.  When asked what he did to
corroborate the Crime Stoppers tip, Officer X testified that, in checking the
tip, A[w]e=ll try
to pull up addresses or names in the county computer.@  When asked whether he did so in this case,
his response was, AI=m sure I
did.@








The record reflects no other attempts to verify
the information relayed in the Crime Stoppers tip until the officers set up the
controlled buy.  Officer X also admitted
that one of the persons named as dealing drugs out of the apartment was a
ten-year-old child.  Officer X considered
the tip to have no bearing on the probable cause contained in the affidavit.

Because (1) the tip came from an anonymous Crime
Stoppers informant, (2) Officer X did not verify the information in the tip,
and (3) he did not verify the reliability of the tip, the record clearly shows
that Officer X=s statements in the second,
third, and fourth numbered paragraphs of the affidavitC

2.     That
your affiant met with a reliable confidential informant concerning the illegal
possession and distribution of crack cocaine from 5308 E. Rosedale #158.  That the confidential informant provided the
following information:

 

A.     That
black female approximately 38-42 years of age, 5'08"-5'10"
tall and weighing approximately 125-135 pounds, medium complexion and medium
black hair[], residing at 5308 E. Rosedale #158, is involved in the
distribution of crack cocaine.

 

B.     That
the confidential informant has personally observed the suspect in possession of
and distributing crack cocaine from within 5308 E. Rosedale #158.

 

3.     That
your affiant met with the confidential informant at a prearranged
location.  The informant specifically
pointed at the location described in the body of this affidavit.

 

That your affiant
confirmed the location appeared exactly as described by the informant.  Your affiant further corroborated much of the
informant[>]s information through
surveillance and independent investigation[; and]

 

 








4.     That
in the past, the informant has displayed the ability to accurately identify
crack cocaine which was later seized and confirmed by laboratory analysis to be
a controlled substance.  That the
informant has provided information that has le[]d to the confiscation of crack
cocaine and the arrest of individuals for possession of controlled substanceC

 

are either untrue or statements made with reckless disregard for the
truth of the statements, according to Officer X=s own
testimony.

As Appellant points out, the affidavit clearly
states that Officer X personally met with a confidential informant who pointed
at Athe
location described in the body of this affidavit.@  This informant, according to the affidavit,
provided information about drug-dealing in Apartment No. 158.  But Office X did not testify that any
informant pointed out the apartment to him. 
Rather, Officer X testified that he pointed out the apartment to the
informant who made the buy.  Officer X
testified that before he arranged the undercover buy, the only information he
possessed had come from the anonymous Crime Stoppers tip.  Officer X testified that, because the initial
informant was actually an anonymous Crime Stoppers tipster, the probable cause
was limited to the undercover buy.  The
police officers set up the buy, got the informant, and directed him to the
apartment.  In describing his actions, in
response to the prosecutor=s
questions, Officer X testified:








A.  Well, we get a confidential informant, and
what we basically do is we send him to the apartment with currency that we give
[him] and get [him] to buy narcotics in the apartment.

 

Q.  Did you, in fact, get a confidential
informant in this case?

 

A.  Yes.

 

Officer X also explained,

 

We drove by and pointed
out the breezeway that the apartment was located in, told him which apartment
it wasCbasically what we=ll do is we=ll search their pockets
to make sure they don=t have narcotics on them
or cash because we don=t want them to take that
into the apartment with them.  We want to
make sure what they bring out of the apartment they didn=t go in with, if that
makes sense.

 

Pointed out the apartment, take him around down just down the block,
drop him off, watch him walk back to the apartment.  They go in the apartment and do what they do;
they come back out of the apartment directly to us.

 

Officer X=s
testimony made it clear that the informant referred to in paragraph five of his
affidavit was not the person referred to in paragraphs two, three, and
four.  All of the information referred to
in paragraphs two and three was received before Officer X contacted the
informant who made the buy and was provided by someone who knew which apartment
was involved and directed Officer X to that apartment.  Paragraph four refers to the informant who,
according to the affidavit, provided the original information and directed
Officer X to the apartment.








In his testimony, Officer X admitted that the
original information which he attributed to a reliable informant in his
affidavit had actually come instead from the anonymous tipster.  He referred to that person in paragraph two
as Aa
reliable informant,@ and subsequently, in paragraphs
two, three, and four as Athe confidential informant@ and Athe
informant.@ 
According to the affidavit, the reliable confidential informant of
paragraphs two, three, and four pointed out the apartment to Officer X.  If Officer X was not referring to the
anonymous tipster in his testimony, then he has created a second informant out
of whole cloth.

Paragraph five shifts gears and refers to June
27, 2001.  Officer X met with Aa
reliable and confidential informant.@  Officer X also admitted in his testimony that
this second informant was not the source of the original information.  Subsequent references to the second informant
are to Athe
confidential informant.@ 
Although the affidavit states that the initial informant pointed out the
apartment to Officer X, in regard to the informant in paragraph five, Officer X
testified that he himself pointed out the apartment to the informant who was to
make the buy:

A [Officer X].  We had a Tarrant
County Crime Stoppers complaint on that apartment.

 

Q.  Did the Fort Worth Police
Department Narcotics Division receive several tips from Crime Stoppers in the
past?








A.  Yes.

 

Q.  Has it been proven to be a
credible and reliable source of information for the police department?

 

A.  Yes.

 

. . . .

 

Q.  [On]
June 29 of 2001[,] what did you do in response to that tip?   

 

A.  We did what we call a cover[t] buy at the
apartment.

 

Q.  Could you talk to the Court about what you
mean?

 

A.  Well, we get a confidential
informant, and what we basically do is we send him to the apartment with
currency that we give [him] and get [him] to buy narcotics in the apartment.

 

Q.  Did you, in fact, get a
confidential informant in this case?

 

A.  Yes.

 

Officer X got a confidential informant, pointed out the breezeway, and
Atold him
which apartment it was.@

Officer X=s
testimony makes clear that the informant who told the police which apartment he
or she was reporting as the site of the drug-dealing was not the same informant
who had to be shown where the breezeway was and told Awhich
apartment it was.@

Officer X also stated,








A.  Told him what we were looking for, which was
crack cocaine; sent him into the apartment with $20, and instructed him to try
to buy crack cocaine from the apartment.

 

Officer X testified that they were in his car
when he gave the informant his instructions. 
The car was around the corner rather than in the parking lot of the
apartment.  Although Officer X was able
to watch the informant until he got to the breezeway, he was not able to watch
him after he had entered the breezeway. 
This testimony directly contradicts the portion of the fifth- numbered
paragraph in the affidavit in which Officer X stated that he watched the
informant enter Apartment No. 158:  AUpon
leaving your affiant, your affiant conducted a visual surveillance as the
confidential informant went into the apartment complex located at 5308 E.
Rosedale #158.  Once inside, the
confidential informant stayed a short period of time, then returned and met
with your affiant.@ 
[Emphasis added.]

Officer X also admitted that when the police
returned to the apartment with the warrant to make the arrests, a man was just
outside Apartment No. 158.  The man
dropped some drugs on the ground when he saw the officers approach.  Inside the breezeway are two apartments
downstairs and a stairway leading to two apartments upstairs.  A person who went into the breezeway, then,
would have access to four apartments as well as to the common areas both
upstairs and downstairs.








The misstatements in the affidavit supporting the
warrant are significant. As statements that are either untrue or made with
reckless disregard for the truth, paragraphs two, three, and four of the
affidavit, and the portion of paragraph five quoted above, must be disregarded
in considering the sufficiency of the affidavit to establish probable cause to justify
the warrant.[16]  The only evidence that remains in the
affidavit from which to determine probable cause to search Apartment No. 158
and seize evidence therefrom are the first- numbered paragraph (providing that
Officer X, #2615, has been a Fort Worth Police Officer for over nine years and
is currently assigned to the Special Operations Division, Narcotic Section) and
a portion of the fifth-numbered paragraph (stating that the officers provided a
confidential informant with money, searched him before he left and when he
returned, and that he had a substance purporting to be crack cocaine when he
returned that he claimed he purchased from a black female approximately 38-42
years of age, 5'08"-5'10" tall and weighing
approximately 125-135 pounds, medium complexion and medium black hair).  That evidence is not enough.








It is a well-established tenet of constitutional
law that the information from the unnamed informant alone will not establish
probable cause.[17]  This tenet applies equally to the unnamed
tipster.[18]  As our sister court in Austin has noted, 

In evaluating whether
anonymously provided information suffices to support a finding of probable
cause, the informant's veracity, reliability, and basis of information are
still Ahighly relevant@ factors.  Accordingly, an anonymous telephone call
alone rarely will merit the requisite level of suspicion to justify even an
investigative detention.  The anonymously
provided information must contain some indicia of reliability or be Areasonably corroborated@ by police before it can
be used to justify a search.  Moreover,
mere corroboration of details that are easily obtainable at the time the
information is provided will not support a finding of probable cause.  In addition, wholly conclusory statements in
the affidavit will not suffice.[19]

 

Neither Officer X nor this court considers the
uncorroborated Crime Stoppers tip sufficient to support the warrant in
question.  As Officer X admitted, the
only confidential informant other than the person who made the buy was the
anonymous Crime Stoppers tipster.








Examining the remainder of paragraph five, it is
glaringly deficient of any justification for relying on any representations
made by the confidential informant. 
There is nothing to explain why he should be considered reliable and trustworthy.  Except for the informant=s report
to Officer X, the affidavit provides no reason to believe the informant got the
rock of crack cocaine from an occupant of Apartment No. 158 rather than from an
occupant of one of the other three apartments in the breezeway or from someone
standing out in the breezeway area.








The State argues that the controlled buy alone Aprovides
plenty of bases to corroborate the informant=s
statement.@ 
We disagree, especially in light of the fact that Officer X admitted
that he did not actually see the informant enter the apartment in
question.  Officer X also admitted that
he searched only the informant=s
pockets and that he could have had drugs concealed elsewhere on his body.  Controlled buys that have constituted
sufficient corroboration of an informant=s
statement have been those in which officers either have seen the transaction
itself or have, at the very least, seen the informant enter the door of the
specific house or apartment and come out with the drugs.[20]  Our sister court in Corpus Christi held an
affidavit insufficient  because it
contained no information regarding the reliability of the informant and
indicated no personal observations of the affiant regarding the transaction
between the defendant and the affiant=s agent.[21]  In Adkins, the El Paso court held an affidavit
insufficient because it did not indicate whether the source of the tip was
direct observation or reliable hearsay, it did not indicate a basis for the
informant=s reliability such as past
performance, and it did not explain the nexus between the original tip and the
officer=s
corroborative details.[22]  In reversing the decision of the El Paso
court, the Texas Court of Criminal Appeals nevertheless approved the lower
court=s
reasoning on this issue.[23]








Considering the affidavit exclusive of the
statements that were untrue or made with reckless disregard for the truth of
the statements, it contains a statement of Officer X=s credentials
and an uncorroborated representation by an informant whom Officer X may or may
not have known before that the informant went to the apartment in question and
bought crack cocaine with money that Officer X provided him.  We hold that the surviving portion of the
affidavit is inadequate to support a neutral magistrate=s
probable cause determination that would justify the warrant.  Consequently, we hold that the trial court
abused its discretion in denying Appellant=s motion
to suppress.  We sustain Appellant=s first
point.  In light of our disposition of
Appellant=s first point, we do not reach
her remaining points.[24]

Conclusion

Having held that the search warrant was invalid
and that there was no probable cause for the search and seizure, we reverse the
trial court=s judgment and remand this case
for trial without the illegally seized evidence.

 

 

LEE
ANN DAUPHINOT

JUSTICE

 

PANEL B:   DAUPHINOT, HOLMAN, and GARDNER, JJ.

HOLMAN, J. dissents without opinion.

PUBLISH

DELIVERED:  January 19,
2006











[1]See Tex. R. App. P. 50.





[2]Illinois v. Gates, 462 U.S. 213, 230-31, 103 S. Ct. 2317, 2328 (1983). 





[3]U.S. Const. amend. IV; Tex.
Const. art. I, ' 9; Tex. Code
Crim. Proc. Ann. art.
18.01(b) (Vernon 2005); Jones v. State, 833 S.W.2d 118, 123 (Tex. Crim.
App. 1992), cert. denied, 507 U.S. 921 (1993); cf. Cates v. State,
120 S.W.3d 352, 355 n.3 (Tex. Crim. App. 2003) (setting forth the distinction
between a suppression hearing and a Franks hearing, at which additional
evidence may be admitted to show the falsity of assertions within an
affidavit). 





[4]See Gates,
462 U.S. at 239, 103 S. Ct. at 2332; Hennessy v. State, 660 S.W.2d 87,
89 (Tex. Crim. App. [Panel Op.] 1983).





[5]Gates, 462
U.S. at 236, 103 S. Ct. at 2331.





[6]Id. at 230,
103 S. Ct. at 2328.





[7]Id. at
241-42, 103 S. Ct. at 2334.





[8]Id. at 233,
103 S. Ct. at 2329.





[9]Franks v. Delaware, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 2676 (1978).





[10]Gates, 462
U.S. at 236, 103 S. Ct. at 2331; see Bower v. State, 769 S.W.2d 887, 902
(Tex. Crim. App.) (holding we do not conduct a de novo review but look to the
evidence as a whole and determine whether there is substantial evidence to
support the magistrate=s decision), cert. denied, 492 U.S. 927 (1989),
overruled on other grounds, Heitman v. State, 815 S.W.2d 681, 685
n.6 (Tex. Crim. App. 1991).





[11]Tex. Const. art. V, ' 6.





[12]See Franks,
438 U.S. at 155-56, 98 S. Ct. at 2676.





[13]Id.





[14]Id. at 170,
98 S. Ct. at 2683.





[15]Id. at 171,
98 S. Ct. at 2684.





[16]See Gates,
462 U.S. at 236, 103 S. Ct. at 2331; Bower, 769 S.W.2d at 902.





[17]Janecka v. State, 739 S.W.2d 813, 825 (Tex. Crim. App. 1987).





[18]See Parish
v. State, 939 S.W.2d 201, 203 (Tex. App.CAustin 1997, no pet.) (citations omitted).





[19]Id.





[20]See, e.g, Richardson
v. State, 622 S.W.2d 852, 856 (Tex. Crim. App. 1981); State v. Ozuna,
88 S.W.3d 307, 312-13 (Tex. App.CSan Antonio 2002, pet. ref=d).





[21]Dees v. State,
722 S.W.2d 209, 214-15 (Tex. App.CCorpus Christi 1986, pet. ref=d).





[22]Adkins v. State,
675 S.W.2d 604, 607 (Tex. App.CEl Paso 1984), rev=d
on other grounds, 717 S.W.2d 363
(Tex. Crim. App. 1986).





[23]Adkins, 717
S.W.2d at 364.





[24]See Tex. R. App. P. 47.1.