

NUMBER 13-07-00045-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI ‑ EDINBURG

| | |
|---|---|
| **JOHN WALTER CALDWELL,** | **Appellant,** |
| **v.** | |
| **THE STATE OF TEXAS,** | **Appellee.** |

### On appeal from the 284th District Court
### of Montgomery County, Texas.

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Vela**
**Memorandum Opinion by Justice Rodriguez**

Following the denial of his motion to suppress evidence, appellant, John Walter Caldwell, pleaded guilty to the offense of possession of a controlled substance. *See* Tex. Health & Safety Code Ann. § 481.115(c) (Vernon 2003). The trial court certified Caldwell's right to appeal and assessed punishment at twenty years' confinement in the

Texas Department of Criminal Justice-Institutional Division. By three issues, Caldwell appeals the trial court's denial of his motion to suppress. We reverse and remand.

## I. SUPPRESSION HEARING

At the hearing on his motion to suppress evidence, Caldwell asserted that the police seized crack cocaine in violation of the United States and Texas Constitutions. *See* U.S. CONST. AMEND. IV; TEX. CONST. art. I, § 9. The crack cocaine was found when police entered a tool shed on the premises of Caldwell's residence without first obtaining a warrant. At the hearing, the State presented the testimony of Detectives Carl Jones and Ricky Cathey; Caldwell presented the testimony of Walter Curtis Hightower.

Detective Jones testified that he received a call from an anonymous person[1] who informed him that a black male, wearing a black hat, black shirt, white undershirt, and blue jeans would have crack cocaine in his right front pocket at a house located at 407 Marlin Street. Detective Jones stated that after receiving the call, he picked up Detective Cathey and proceeded to the location.

Detective Jones further testified that, when they arrived, some men were standing around in the driveway area of the residence. Detective Jones saw Caldwell standing between two buildings, wearing clothing identical to that described by the caller. He testified that after they exited their vehicle, Caldwell "made a movement towards a [tool shed] behind the house." Before Caldwell stepped into the tool shed, Detective Jones saw that Caldwell had his hand in his right front pocket, which concerned him "because my person that had given me the information advised me that the narcotics would be in the

_____

[1] On cross-examination by the State, Walter Curtis Hightower admitted that he was the person who called Detective Jones to report that Caldwell had crack cocaine in his pocket.

2

right front pocket." Specifically, Detective Jones saw Caldwell pull his hand out of his pocket before he went into the tool shed. Detective Jones reached the tool shed as Caldwell exited, then "stepped up into the [tool shed]" to "make sure there was nobody else inside" and "directed [Caldwell] towards Detective Cathey." Detective Jones testified that "there was a toolbox inside. And I just glanced down, and you could see the cellophane narcotics." He retrieved the narcotics and arrested Caldwell.

Detective Cathey testified that Detective Jones told him what the suspect would be wearing, and that after arriving at the location, he saw that Caldwell was wearing clothing as described. Detective Cathey explained that, based on Detective Jones's information that Caldwell had crack in his front right pocket, he focused his attention on Caldwell to make sure that he did not throw the crack away. Detective Cathey stated:

> At that point when we pulled up he was starting to walk away from us, and his right hand went into his right pocket. . . . He walked to a–I would say it's like a detached garage with a door facing north. At that point he started entering the door. And I saw his right hand come out and him disappear inside.

According to Detective Cathey, he stayed with the three or four individuals who were standing in the driveway, while Detective Jones followed Caldwell to the tool shed, and by the time he reached it, Caldwell was exiting. Detective Jones sent Caldwell to where Detective Cathey was standing, then entered the tool shed. When he exited the tool shed, he had several rocks of crack cocaine that were wrapped in a plastic bag.

After hearing the evidence, the trial court denied Caldwell's motion to suppress. Caldwell subsequently pleaded guilty and was sentenced to twenty years' confinement. This appeal ensued.

3

## II. APPLICABLE LAW AND STANDARD OF REVIEW

An individual is guaranteed the right to be secure from unreasonable searches. U.S. CONST. amend IV; TEX. CONST. art. I, § 9. A warrantless search is presumptively unreasonable under the Fourth Amendment, unless a recognized exception to the warrant requirement exists. *United States v. Karo*, 468 U.S. 705, 717 (1984); *Fonseca v. State*, 881 S.W.2d 144, 149 (Tex. App.–Corpus Christi 1994, no pet.). The State may validate a warrantless search under the doctrine of exigent circumstances, which is a recognized exception to the warrant requirement. *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007); *see Fonseca*, 881 S.W.2d at 149 (providing that "[t]he State bears the burden of establishing the legality of a warrantless search or seizure"). Under the exigent circumstances doctrine, the State may justify a warrantless search or entry of a specific location if it shows that: (1) probable cause existed at the time the search was made; and (2) exigent circumstances existed, which made the procuring of a warrant impracticable. *Gutierrez*, 221 S.W.3d at 685 (providing that "if police have probable cause coupled with an exigent circumstance . . . the Fourth Amendment will tolerate a warrantless search"); *see Parker v. State*, 206 S.W.3d 593, 597 (Tex. Crim. App. 2006) (setting out that "a warrantless entry into a residence is considered equivalent to a warrantless search"); *McNairy v. State*, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991) (en banc). Probable cause is the accumulation of facts which, when viewed in their totality, would lead a reasonable police officer to conclude, with a fair probability, that a crime has been committed or is being committed. *Parker*, 206 S.W.3d at 599.

An anonymous telephone call, standing alone, will not provide sufficient probable cause for a warrantless search. *Rojas v. State*, 797 S.W.2d 41, 43 (Tex. Crim. App. 1990) (en banc); *Glass v. State*, 681 S.W.2d 599, 601 (Tex. Crim. App. 1984) (en banc) (providing that an anonymous phone call, without corroboration, will never provide sufficient facts that would authorize a warrantless search). "Moreover, mere corroboration of details that are easily obtainable at the time the information is provided will not support a finding of probable cause." *Parish v. State*, 939 S.W.2d 201, 203 (Tex. App.–Austin 1997, no pet.). However, through independent corroboration of the informant's information, the police can provide other indicia of the informant's reliability. *Elardo v. State*, 163 S.W.3d 760, 767 (Tex. App.–Texarkana 2005, pet. ref'd); *Parish*, 939 S.W.2d at 203. Indicia of reliability of the informant's tip include the extent of detail that is provided and whether future events are predicted. *See Eisenhauer v. State*, 678 S.W.2d 947, 955 (Tex. Crim. App. 1984) (en banc); *see also Illinois v. Gates*, 462 U.S. 213, 244-46 (1983); *Rojas*, 797 S.W.2d at 44 (setting out that anonymous tip did not provide information based on special or personal knowledge).

Whether the trial court properly denied a defendant's motion to suppress is a mixed question of law and fact. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). "When reviewing a trial court's ruling on a mixed question of law and fact (as is the determination of probable cause in the pretrial suppression hearing in this case), the court of appeals may review de novo the trial court's application of the law of search and seizure to the facts of the case." *Estrada*, 154 S.W.3d at 607. Although "[w]e review de novo the application of the law to

5

facts . . . we also afford almost total deference to the trial court's evaluation of the credibility and demeanor of the witnesses who testified at the pre-trial hearing." *Id.* "The question of whether a specific search or seizure is 'reasonable' or supported by probable cause under the Fourth Amendment is subject to de novo review." *Dixon v. State,* 206 S.W.3d 613, 616 (Tex. Crim. App. 2006). The evidence must be viewed in the light most favorable to the trial court's ruling when the trial court makes no explicit findings of historical fact, as in this case. *Id.* We must uphold the trial court's ruling if it is correct under any theory of law applicable to the case. *Estrada,* 154 S.W.3d at 607.

### III. ANALYSIS

By his first issue, Caldwell asserts that, in considering the totality of the circumstances, the police did not have the required probable cause to justify the warrantless entry into the tool shed. The State argues that the detectives did have probable cause to enter the tool shed because "[Caldwell's] actions corroborated the phoned-in tip."

Detective Jones testified that he received a call from "a person" who informed him that Caldwell would have crack cocaine in his right front pocket and would be at 407 Marlin Street. Detective Jones did not identify the person who supplied this information, and the State did not present any testimony or evidence regarding the person's reliability. *See Rojas,* 797 S.W.2d at 43. Relying on *Lunde v. State,* the State argues that Caldwell's actions at the scene corroborated the information provided by the informant. *See* 736 S.W.2d 665, 667 (Tex. Crim. App. 1987). However, in *Lunde,* the State provided evidence of the informant's reliability, while in this case there was none. *See id.* ("As was the case

6

in *Whaley v. State*, 686 S.W.2d 950 (Tex. Crim. App. 1985), the informant was one who had given reliable and credible information in the past, resulting in criminal convictions."). Standing alone, the tip in the present case completely lacks the necessary indicia of reliability. It provides no information from which to conclude the caller was honest or his information reliable, and gives no indication for the basis of his knowledge of appellant's criminal activities. *See Dowler v. State*, 44 S.W.3d 666, 670 (Tex. App.–Austin 2001, pet ref'd) (explaining that "[a]n accurate description of a subject's readily observable location and appearance will help the police correctly identify the person whom the tipster meant to accuse, but does not show that the tipster has knowledge of concealed criminal activity"). Therefore, the State was required to provide other indicia of the informant's reliability. *See Whaley*, 686 S.W.2d at 951 ("[A] deficiency in one [element (reliability, veracity or basis of knowledge)] may be compensated for, in determining the overall reliability of a tip . . . by some other indicia of reliability."); *Elardo*, 163 S.W.3d at 768.

The State urges this Court to conclude that the detectives "were able to corroborate the key detail of the tip–that the cocaine would be in [Caldwell's] front right pocket–by observing [Caldwell] stuff his hand into the very pocket the tipster said the drugs would be found and then heading towards the tool shed." We decline to do so. *See Parker*, 206 S.W.3d at 597 ("[W]hen the question is probable cause to cross the threshold of a private residence, probable cause may point to the location, but not necessarily a specific person."). The fact that Caldwell put his hand in his right pocket as he entered the tool

shed was not sufficient to corroborate the tip that Caldwell had drugs in his pocket thereby authorizing a warrantless entry into the tool shed.[2] *See Rojas*, 797 S.W.2d at 44.

Furthermore, even if the fact that Caldwell put his hand in his right pocket may have led Detective Jones to suspect that Caldwell had drugs in his pocket, Detective Jones did not search Caldwell's right pocket, but instead entered the tool shed. *Hughes v. State*, 24 S.W.3d 833, 838 (Tex. Crim. App. 2000) (providing that "[p]robable cause requires more than mere suspicion"). Therefore, considering the totality of the circumstances, the tipster's information was not sufficiently corroborated by the police. *See Rojas*, 797 S.W.2d at 43; *see also Hall v. State*, 74 S.W.3d 521, 525 (Tex. App.–Amarillo 2002, no pet.) ("[T]he tip must be corroborated not only as to the identity of the individual sought to be accused but also as to the improper nature of his conduct.").

Based on our review of the record, we conclude that the evidence, when viewed in the light most favorable to the trial court's ruling, is not enough to establish that there was

---

[2] An anonymous tip must be corroborated by facts before the officers may conduct the warrantless search. *Compare Glass v. State*, 681 S.W.2d 599, 601 (Tex. Crim. App. 1984) (en banc) (concluding that officers did not have probable cause to either arrest or search appellant's vehicle based on the following facts: (1) an anonymous caller told dispatch that the occupants of two automobiles were shooting at each other at a certain intersection in town; (2) officers stationed themselves near the intersection but did not see any "unusual activity occurring or taking place, such as persons in one vehicle shooting at persons in another vehicle"; (3) the officers observed the vehicles which the anonymous tipster described driving near the intersection; (4) the officer testified that the passenger "looked at him" and "seemed kind of nervous"; (5) the passenger turned away from the officer as he looked at the passenger; and (6) the passenger made the officer nervous) *with Eisenhauer v. State*, 678 S.W.2d 947, 955 (Tex. Crim. App. 1984) (en banc) (applying the totality of the circumstances approach to a warrantless arrest and finding that even if based on an anonymous informant, the officer had a substantial basis to conclude there was probable cause to arrest the appellant based on the following facts: (1) the informant "gave the officer a fair detailed physical description of the appellant and his clothing, giving appellant's name, and predicting his future actions that day and the purpose of appellant's trip"; (2) then police corroborated "every facet of the information given [to police] by the informer except whether appellant had accomplished his mission and the cocaine was on his person or in his bag"; and (3) appellant's actions "in the airport after arrival, albeit mostly innocent, together with his reactions when he learned the officers believed he possessed cocaine brought from Miami. . . ."); *Illinois v. Gates*, 462 U.S. 213, 244-46 (1983) (finding that an officer's independent investigative work corroborated an anonymous letter's predictions and that the "letterwriter's accurate information as to the travel plans of each of the Gateses was of a character likely obtained only from the Gateses themselves, or from someone familiar with their not entirely ordinary travel plans").

probable cause for Detective Jones to believe with a fair probability that a crime had been or was being committed in the tool shed.  *See Parker*, 206 S.W.3d at 599, 601.  Because Detective Jones's warrantless entry into Caldwell's tool shed was unreasonable, we conclude that the trial court abused its discretion when it denied Caldwell's motion to suppress.  *See Parish*, 939 S.W.2d at 203; *see also Gutierrez*, 221 S.W.3d at 685-86 ("If the State does not adequately establish both probable cause and exigent circumstances, then a warrantless entry will not withstand judicial scrutiny.").  We sustain Caldwell's first issue.  Moreover, we need not address Caldwell's second and third issues because they are not dispositive.  *See* Tex. R. App. P. 47.1.

## IV. Conclusion

We reverse and remand for proceedings consistent with this opinion.

NELDA V. RODRIGUEZ
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and
filed this 21st day of August, 2008.