NUMBER 13-07-00045-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


JOHN WALTER CALDWELL, Appellant,


v.
 


THE STATE OF TEXAS, Appellee.

 


On appeal from the 284th District Court 


of Montgomery County, Texas.


 


MEMORANDUM OPINION



Before Justices Rodriguez, Garza, and Vela


Memorandum Opinion by Justice Rodriguez



 Following the denial of his motion to suppress evidence, appellant, John Walter
Caldwell, pleaded guilty to the offense of possession of a controlled substance. See Tex.
Health & Safety Code Ann. § 481.115(c) (Vernon 2003). The trial court certified
Caldwell's right to appeal and assessed punishment at twenty years' confinement in the
Texas Department of Criminal Justice-Institutional Division. By three issues, Caldwell
appeals the trial court's denial of his motion to suppress. We reverse and remand.

I. Suppression Hearing

 At the hearing on his motion to suppress evidence, Caldwell asserted that the police
seized crack cocaine in violation of the United States and Texas Constitutions. See U.S.
Const. Amend. IV; Tex. Const. art. I, § 9. The crack cocaine was found when police
entered a tool shed on the premises of Caldwell's residence without first obtaining a
warrant. At the hearing, the State presented the testimony of Detectives Carl Jones and
Ricky Cathey; Caldwell presented the testimony of Walter Curtis Hightower.

 Detective Jones testified that he received a call from an anonymous person (1) who
informed him that a black male, wearing a black hat, black shirt, white undershirt, and blue
jeans would have crack cocaine in his right front pocket at a house located at 407 Marlin
Street. Detective Jones stated that after receiving the call, he picked up Detective Cathey
and proceeded to the location.

 Detective Jones further testified that, when they arrived, some men were standing
around in the driveway area of the residence. Detective Jones saw Caldwell standing
between two buildings, wearing clothing identical to that described by the caller. He
testified that after they exited their vehicle, Caldwell "made a movement towards a [tool
shed] behind the house." Before Caldwell stepped into the tool shed, Detective Jones saw
that Caldwell had his hand in his right front pocket, which concerned him "because my
person that had given me the information advised me that the narcotics would be in the
right front pocket." Specifically, Detective Jones saw Caldwell pull his hand out of his
pocket before he went into the tool shed. Detective Jones reached the tool shed as
Caldwell exited, then "stepped up into the [tool shed]" to "make sure there was nobody else
inside" and "directed [Caldwell] towards Detective Cathey." Detective Jones testified that
"there was a toolbox inside. And I just glanced down, and you could see the cellophane
narcotics." He retrieved the narcotics and arrested Caldwell.

 Detective Cathey testified that Detective Jones told him what the suspect would be
wearing, and that after arriving at the location, he saw that Caldwell was wearing clothing
as described. Detective Cathey explained that, based on Detective Jones's information
that Caldwell had crack in his front right pocket, he focused his attention on Caldwell to
make sure that he did not throw the crack away. Detective Cathey stated:

 At that point when we pulled up he was starting to walk away from us, and
his right hand went into his right pocket. . . . He walked to a-I would say it's
like a detached garage with a door facing north. At that point he started
entering the door. And I saw his right hand come out and him disappear
inside.


According to Detective Cathey, he stayed with the three or four individuals who were
standing in the driveway, while Detective Jones followed Caldwell to the tool shed, and by
the time he reached it, Caldwell was exiting. Detective Jones sent Caldwell to where
Detective Cathey was standing, then entered the tool shed. When he exited the tool shed,
he had several rocks of crack cocaine that were wrapped in a plastic bag.

 After hearing the evidence, the trial court denied Caldwell's motion to suppress. 
Caldwell subsequently pleaded guilty and was sentenced to twenty years' confinement. 
This appeal ensued.


II. Applicable Law and Standard of Review

 An individual is guaranteed the right to be secure from unreasonable searches. 
U.S. Const. amend IV; Tex. Const. art. I, § 9. A warrantless search is presumptively
unreasonable under the Fourth Amendment, unless a recognized exception to the warrant
requirement exists. United States v. Karo, 468 U.S. 705, 717 (1984); Fonseca v. State,
881 S.W.2d 144, 149 (Tex. App.-Corpus Christi 1994, no pet.). The State may validate
a warrantless search under the doctrine of exigent circumstances, which is a recognized
exception to the warrant requirement. Gutierrez v. State, 221 S.W.3d 680, 685 (Tex. Crim.
App. 2007); see Fonseca, 881 S.W.2d at 149 (providing that "[t]he State bears the burden
of establishing the legality of a warrantless search or seizure"). Under the exigent
circumstances doctrine, the State may justify a warrantless search or entry of a specific
location if it shows that: (1) probable cause existed at the time the search was made; and
(2) exigent circumstances existed, which made the procuring of a warrant impracticable. 
Gutierrez, 221 S.W.3d at 685 (providing that "if police have probable cause coupled with
an exigent circumstance . . . the Fourth Amendment will tolerate a warrantless search");
see Parker v. State, 206 S.W.3d 593, 597 (Tex. Crim. App. 2006) (setting out that "a
warrantless entry into a residence is considered equivalent to a warrantless search");
McNairy v. State, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991) (en banc). Probable cause
is the accumulation of facts which, when viewed in their totality, would lead a reasonable
police officer to conclude, with a fair probability, that a crime has been committed or is
being committed. Parker, 206 S.W.3d at 599.

 An anonymous telephone call, standing alone, will not provide sufficient probable
cause for a warrantless search. Rojas v. State, 797 S.W.2d 41, 43 (Tex. Crim. App. 1990)
(en banc); Glass v. State, 681 S.W.2d 599, 601 (Tex. Crim. App. 1984) (en banc)
(providing that an anonymous phone call, without corroboration, will never provide sufficient
facts that would authorize a warrantless search). "Moreover, mere corroboration of details
that are easily obtainable at the time the information is provided will not support a finding
of probable cause." Parish v. State, 939 S.W.2d 201, 203 (Tex. App.-Austin 1997, no
pet.). However, through independent corroboration of the informant's information, the
police can provide other indicia of the informant's reliability. Elardo v. State, 163 S.W.3d
760, 767 (Tex. App.-Texarkana 2005, pet. ref'd); Parish, 939 S.W.2d at 203. Indicia of
reliability of the informant's tip include the extent of detail that is provided and whether
future events are predicted. See Eisenhauer v. State, 678 S.W.2d 947, 955 (Tex. Crim.
App. 1984) (en banc); see also Illinois v. Gates, 462 U.S. 213, 244-46 (1983); Rojas, 797
S.W.2d at 44 (setting out that anonymous tip did not provide information based on special
or personal knowledge).

 Whether the trial court properly denied a defendant's motion to suppress is a mixed
question of law and fact. Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005);
Guzman v. State, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). "When reviewing a trial
court's ruling on a mixed question of law and fact (as is the determination of probable
cause in the pretrial suppression hearing in this case), the court of appeals may review de
novo the trial court's application of the law of search and seizure to the facts of the case."
Estrada, 154 S.W.3d at 607. Although "[w]e review de novo the application of the law to
facts . . . we also afford almost total deference to the trial court's evaluation of the credibility
and demeanor of the witnesses who testified at the pre-trial hearing." Id. "The question
of whether a specific search or seizure is 'reasonable' or supported by probable cause
under the Fourth Amendment is subject to de novo review." Dixon v. State, 206 S.W.3d
613, 616 (Tex. Crim. App. 2006). The evidence must be viewed in the light most favorable
to the trial court's ruling when the trial court makes no explicit findings of historical fact, as
in this case. Id. We must uphold the trial court's ruling if it is correct under any theory of
law applicable to the case. Estrada, 154 S.W.3d at 607.

III. Analysis

 By his first issue, Caldwell asserts that, in considering the totality of the
circumstances, the police did not have the required probable cause to justify the
warrantless entry into the tool shed. The State argues that the detectives did have
probable cause to enter the tool shed because "[Caldwell's] actions corroborated the
phoned-in tip."

 Detective Jones testified that he received a call from "a person" who informed him
that Caldwell would have crack cocaine in his right front pocket and would be at 407 Marlin
Street. Detective Jones did not identify the person who supplied this information, and the
State did not present any testimony or evidence regarding the person's reliability. See
Rojas, 797 S.W.2d at 43. Relying on Lunde v. State, the State argues that Caldwell's
actions at the scene corroborated the information provided by the informant. See 736
S.W.2d 665, 667 (Tex. Crim. App. 1987). However, in Lunde, the State provided evidence
of the informant's reliability, while in this case there was none. See id. ("As was the case
in Whaley v. State, 686 S.W.2d 950 (Tex. Crim. App. 1985), the informant was one who
had given reliable and credible information in the past, resulting in criminal convictions."). 
Standing alone, the tip in the present case completely lacks the necessary indicia of
reliability. It provides no information from which to conclude the caller was honest or his
information reliable, and gives no indication for the basis of his knowledge of appellant's
criminal activities. See Dowler v. State, 44 S.W.3d 666, 670 (Tex. App.-Austin 2001, pet
ref'd) (explaining that "[a]n accurate description of a subject's readily observable location
and appearance will help the police correctly identify the person whom the tipster meant
to accuse, but does not show that the tipster has knowledge of concealed criminal
activity"). Therefore, the State was required to provide other indicia of the informant's
reliability. See Whaley, 686 S.W.2d at 951 ("[A] deficiency in one [element (reliability,
veracity or basis of knowledge)] may be compensated for, in determining the overall
reliability of a tip . . . by some other indicia of reliability."); Elardo, 163 S.W.3d at 768.

 The State urges this Court to conclude that the detectives "were able to corroborate
the key detail of the tip-that the cocaine would be in [Caldwell's] front right pocket-by
observing [Caldwell] stuff his hand into the very pocket the tipster said the drugs would be
found and then heading towards the tool shed." We decline to do so. See Parker, 206
S.W.3d at 597 ("[W]hen the question is probable cause to cross the threshold of a private
residence, probable cause may point to the location, but not necessarily a specific
person."). The fact that Caldwell put his hand in his right pocket as he entered the tool
shed was not sufficient to corroborate the tip that Caldwell had drugs in his pocket thereby
authorizing a warrantless entry into the tool shed. (2) See Rojas, 797 S.W.2d at 44.

 Furthermore, even if the fact that Caldwell put his hand in his right pocket may have
led Detective Jones to suspect that Caldwell had drugs in his pocket, Detective Jones did
not search Caldwell's right pocket, but instead entered the tool shed. Hughes v. State, 24
S.W.3d 833, 838 (Tex. Crim. App. 2000) (providing that "[p]robable cause requires more
than mere suspicion"). Therefore, considering the totality of the circumstances, the
tipster's information was not sufficiently corroborated by the police. See Rojas, 797
S.W.2d at 43; see also Hall v. State, 74 S.W.3d 521, 525 (Tex. App.-Amarillo 2002, no
pet.) ("[T]he tip must be corroborated not only as to the identity of the individual sought to
be accused but also as to the improper nature of his conduct.").

 Based on our review of the record, we conclude that the evidence, when viewed in
the light most favorable to the trial court's ruling, is not enough to establish that there was
probable cause for Detective Jones to believe with a fair probability that a crime had been
or was being committed in the tool shed. See Parker, 206 S.W.3d at 599, 601. Because
Detective Jones's warrantless entry into Caldwell's tool shed was unreasonable, we
conclude that the trial court abused its discretion when it denied Caldwell's motion to
suppress. See Parish, 939 S.W.2d at 203; see also Gutierrez, 221 S.W.3d at 685-86 ("If
the State does not adequately establish both probable cause and exigent circumstances,
then a warrantless entry will not withstand judicial scrutiny."). We sustain Caldwell's first
issue. Moreover, we need not address Caldwell's second and third issues because they
are not dispositive. See Tex. R. App. P. 47.1.

IV. Conclusion

 We reverse and remand for proceedings consistent with this opinion. 


 NELDA V. RODRIGUEZ

 Justice

Do not publish.

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and 

filed this 21st day of August, 2008.

1. On cross-examination by the State, Walter Curtis Hightower admitted that he was the person who
called Detective Jones to report that Caldwell had crack cocaine in his pocket.
2. An anonymous tip must be corroborated by facts before the officers may conduct the warrantless
search. Compare Glass v. State, 681 S.W.2d 599, 601 (Tex. Crim. App. 1984) (en banc) (concluding that
officers did not have probable cause to either arrest or search appellant's vehicle based on the following facts: 
(1) an anonymous caller told dispatch that the occupants of two automobiles were shooting at each other at
a certain intersection in town; (2) officers stationed themselves near the intersection but did not see any
"unusual activity occurring or taking place, such as persons in one vehicle shooting at persons in another
vehicle"; (3) the officers observed the vehicles which the anonymous tipster described driving near the
intersection; (4) the officer testified that the passenger "looked at him" and "seemed kind of nervous"; (5) the
passenger turned away from the officer as he looked at the passenger; and (6) the passenger made the
officer nervous) with Eisenhauer v. State, 678 S.W.2d 947, 955 (Tex. Crim. App. 1984) (en banc) (applying
the totality of the circumstances approach to a warrantless arrest and finding that even if based on an
anonymous informant, the officer had a substantial basis to conclude there was probable cause to arrest the
appellant based on the following facts: (1) the informant "gave the officer a fair detailed physical description
of the appellant and his clothing, giving appellant's name, and predicting his future actions that day and the
purpose of appellant's trip"; (2) then police corroborated "every facet of the information given [to police] by the
informer except whether appellant had accomplished his mission and the cocaine was on his person or in his
bag"; and (3) appellant's actions "in the airport after arrival, albeit mostly innocent, together with his reactions
when he learned the officers believed he possessed cocaine brought from Miami. . . ."); Illinois v. Gates, 462
U.S. 213, 244-46 (1983) (finding that an officer's independent investigative work corroborated an anonymous
letter's predictions and that the "letterwriter's accurate information as to the travel plans of each of the Gateses
was of a character likely obtained only from the Gateses themselves, or from someone familiar with their not
entirely ordinary travel plans").